**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CV-42**

UNITED STATES OF AMERICA,
for the use and benefit of
CKF EXCAVATING, LLC                                                              PLAINTIFF

V.

ACC CONSTRUCTION, INC. and
LIBERTY MUTUAL INSURANCE COMPANY                                 DEFENDANTS

**OPINION & ORDER**

At the final pre-trial conference held in this matter on Friday, July 27, 2012, the parties raised the issue of a dispute regarding the admissibility of certain documents submitted by Defendant ACC to the government and the proper measure of damages. The parties indicated to the Court that resolution of these issues may assist in the settlement of this matter. The Court ordered expedited briefing on the matter.

**BACKGROUND**

This action arises out of the construction of the Grow the Force Unit Operations Facility in Fort Campbell, Kentucky administered by the United States Army Corps of Engineers (the Project). Defendant ACC Construction Company, Inc. ("ACC") was the prime contractor for the Project. On June 3, 2009, ACC subcontracted with Plaintiff CKF Excavating, LLC ("CKF") to perform the grading and excavating work on the Project. On April 29, 2010, when the Project was nearing completion, ACC terminated CKF's contract by letter. That letter stated, in pertinent part, as follows:

> Please be advised that due to illegal actions by Chuck Eades, supervisor/owner of CKF Excavating, on April 27, 2010 that ACC has to relieve CKF Excavating of their contract. CKF Excavating has breached part A-10 (Compliance with Law) of the signed contract with ACC Construction. ACC will not tolerate conduct that

1

      involves terroristic threats to other employees and disorderly conduct on ACC's job site . . . .

DN 40-2.  On May 11, 2010, counsel for CKF sent a letter to ACC disputing the stated reason for its termination from the Project and requesting payments for work performed by CKF totaling $261,578.00.  This amount contains the following components:

| | |
|---|---|
| Pay Request No. 9 | $49,706.95 |
| Pay Request No. 10 | $51,535.09 |
| Pay Request No. 11 | $9,590.41 |
| Retainage | $45,680.37 |
| Cost to Use Stockpiled Material | $78,965.28 |
| Cost for Handling Subcontractor Spoils | $9,000.00 |
| Cost to Repair Sub-Grade Damages by Others | $7,500.00 |
| Cost to Relocate Topsoil | $9,600.00 |

      After ACC failed to pay the requested amount and restore CKF to the Project, CKF brought this Miller Act action against ACC asserting claims for breach of contract and unjust enrichment.[1]  ACC asserted a counterclaim against CKF, alleging CKF "materially breached the terms and condition of the subcontract by, among other things, failing to timely schedule, coordinate and complete its work, committing safety violations, failing to timely pay its subcontractors and suppliers and failing to ensure that its employees did not commit any violations of law."  DN 14 at p. 7.  Trial is currently set in this matter for August 13, 2012.

      As made clear by CKF's trial brief (DN 24), CKF intends to introduce documents submitted by ACC to the government during the course of the Project entitled "Prompt Pay Certifications."  Pursuant to the applicable Federal Acquisition Regulations, 48 C.F.R. 52.232-5, the government makes progress payments as the work proceeds on fixed-price construction contracts.  48 C.F.R. 52.232-5(b).  The contractor's request for such progress payments must

---

[1] Pursuant to the Miller Act, 40 U.S.C. § 3131(b), every person that has furnished labor or material in carrying out the work provided for in the contract that has not been paid in full within 90 days after the date on which the person performed the last of the labor or furnished or supplied the materials may bring a civil action for the amount unpaid.

include, among other things, the following: (1) an itemization of the amounts requested; (2) the amount included for work performed by each subcontractor; (3) the total amount of each subcontract; and (4) the amounts previously paid to each subcontractor. *Id*. Additionally, pursuant to the Prompt Pay Act, a contractor's pay request may not be approved unless the pay request includes the following certifications:

> (i) the amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

> (ii) payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by the certification, in accordance with their subcontract agreements and the requirements of this chapter; and

> (iii) the application does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of their subcontract.

31 U.S.C.A. § 3903(b)(1)(B) (1999); 48 C.F.R. 52.232–5(c). The supporting document on which these certifications are made are the Prompt Payment Certifications. Additionally, the Prompt Pay Act requires all construction contracts with governmental agencies to include a clause requiring the general contractor to pay subcontractors for satisfactory performances within seven days of the receipt of payment from the governmental agency. 31 U.S.C. §3905(b)(1).

Here, pursuant to the Prompt Pay Act and the Federal Acquisition Regulations, ACC submitted one such Prompt Payment Certification to the government on March 23, 2010. With respect to CKF, the March 23 document states that the total amount subcontract to CKF Excavating is $1,041,314.23. It also states that the subcontractor amount included in the pay request was $49,706, that the previous subcontractor payments totaled $757,094.35, and that the subcontractor earnings retained was $42,463.24. Finally, it states that the total subcontractor

3

earnings plus retainage is equal to $849,263.00. This document contains the required certifications and is signed by the project manager.

ACC submitted another Prompt Payment Certification to the government on April 20, 2010. This document states that the subcontractor amount included in the pay request was $51,535,08, that the previous subcontractor payments totaled $806,800.35, and that the subcontractor earnings retained was $45,175.61. Finally, it states that the total subcontractor earnings plus retainage is equal to $903,511.04. This document also contains the required certifications and is signed by the project manager.

Plaintiff has submitted the March 23 and April 20 Prompt Payment Certifications as well as other Prompt Payment Certifications submitted by ACC to the government throughout the course of the Project. The parties dispute the admissibility of these documents.

## DISCUSSION

CKF intends to introduce the Prompt Payment Certifications as admissions by ACC of the following facts that are of consequence to this action: (1) that CKF's work complied with the Project specifications, terms, and conditions; (2) that CKF is entitled to payment of the $49,706.85 amount in Pay Request No. 9, the $51,535.09 amount in Pay Request No. 10, and $45,175.61 in retainage; and (3) that, at the time ACC terminated the subcontract, there was $263,893.00 in money left to fund under the subcontract, but only $117,474.96 of work left to perform.

In response, ACC contends that these Prompt Payment Certifications are not admissible because they are not relevant. Specifically, ACC contends that the documents are neither relevant to the proper measure of damages nor relevant to the reason for the termination. ACC further contends that the Prompt Payment Certifications are not admissible because the statutory

4

requirements of the Prompt Pay Act do not provide CKF a right of action and do not impose any obligation on the general contractor with respect to a subcontractor.

### 1. **Relevance of the Prompt Payment Certifications**

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which the Court finds irrelevant is inadmissible. Fed. R. Evid. 402. Courts however have set the bar relatively low for relevancy under Rule 401. *See Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir.2006) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993)). If the evidence "tend[s] to prove the matter sought to be prove[d]," then it satisfies this the rule's threshold. Fed. R. Evid. 401 (advisory committee notes).

Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "District courts are given broad discretion in making a Rule 403 determination." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). "Unfair prejudice does not mean the damage to a [party]'s case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quoting *Bonds*, 12 F.3d at 567).

Where a suit is pursued against a corporation or an entity, documents or correspondences created by its directors, employees, or agents may be construed as non-hearsay statements, depending on their context. *See* Fed. R. Evid. 801(d)(2) (describing admissions by a party-opponent); *Avondale Mills, Inc. v. Norfolk Southern Corp.*, No. 1:05-CV-2817-MBS, 2008 WL

6953956, at *4-5 (D.S.C. Feb 21, 2008) (admitting non-executive employee emails as non-hearsay in suit against a corporation); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006) (same); *see also Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698 (E.D. Va. 2004) (admitting emails under the business records exception, Fed. R. Evid. 803(b)). For non-hearsay treatment, the party's agent or servant must have made the statement within "the scope of the agency or employment [and] . . . during the existence of the relationship." Fed. R. 801(d)(2)(D). "[T]he party seeking admission 'bears the burden of establishing the proper foundation for the admissibility of [hearsay] statements.'" *Thompson v. City of Lansing*, 410 F. App'x 922, 930 (6th Cir. 2011) (quoting *Liadis v. Sears, Roebuck & Co.*, 47 F. App'x 295, 303 (6th Cir. 2002)).

a. **Measure of Damages**

ACC contends that the Prompt Payment Certifications are not relevant to the proper measure of damages in this case. However, the parties do not agree on the measure of damages. Thus, in order to determine if these documents are relevant, the Court must determine the proper measure of damages in this matter.

The parties do not contest that, if CKF was terminated for any reason other than its default of the subcontract, then the following subcontract provision provides the proper measure of damages:

> A-11 SUSPENSION OR TERMINATION:  This Subcontract will terminate, or the Work will be suspended, to the extent that: (i) the contract terminates or the Owner suspends the Work, in whole or in part, or (ii) Contractor gives written notice to Subcontractor that this Subcontract is terminated or the Work is suspended, in whole or in part.  In any of such events, Subcontractor shall immediately suspend or terminate work as appropriate. **In the case of such termination for any reason other than Subcontractor's default, the Subcontractor shall be entitled to receive payment for work executed and purchased materials that cannot be returned for credit, and any other direct costs incurred in performance of the work and by reason of such**

6

> **termination, but there shall be no allowance for overhead and profit on work not yet executed, and there shall be no compensation for any other consequential, indirect or special damage.**

DN 1-3 at p. 5 (emphasis added). If the jury finds that CKF did not default on the subcontract, then this provision applies and CKF is entitled to be compensated for work performed in accordance to the terms of the subcontract.[2] Thus, the amount CKF was entitled to by virtue of its performance of the work and the amount CKF was actually paid would be relevant to this determination.

The parties disagree as to the proper measure of damages in this case if the jury finds that CKF did in fact default on the subcontract. According the ACC, the proper measure of damages in this case is set forth in a 1956 Kentucky appellate decision, *Koplin v. Faulkner*, 293 S.W.2d 467, 469 (Ky. App. 1956).[3] In *Koplin*, the Kentucky Court of Appeals stated the following rule: "The measure of damages under an ordinary contract, where the defendant has prevented the plaintiff from performing any part thereof, is the net profit which would have been made; that is, the difference between the contract price and the reasonable cost of performance." *Id*. Citing this rule, ACC contends that only the undisputed value of the contract is relevant to a determination of damages. Thus, according to ACC, the amount CKF has been paid under the contract is irrelevant.

---

[2] ACC contends that this provision regarding damages for termination of the subcontract is not applicable because it is undisputed that CKF was terminated for default of the subcontract. Despite this assertion, the reason for CKF's termination is at the heart of the dispute between the parties.

[3] Although this case was brought under the Miller Act, Kentucky substantive law applies to the contractual dispute. *See U.S. ex rel. Aucoin Elec. Supply Co. v. Safeco Ins. Co. of America*, 555 F2d 535, 541 (5th Cir. 1977). Additionally, in cases brought under the Miller Act, the law of the state of the performance of the contract governs the award of damages. *U.S. ex rel. Morgan & Son Earth Moving, Inc. v. Timberland Paving & Const. Co.,* 745 F.2d 595, 599 (9th Cir. 1984).

The Court does not agree with ACC's position regarding the proper measure of damages. Generally, in the absence of a specific contract provision addressing the proper measure of damages, the rule from *Koplin* may apply to calculate CKF's damages in the event of ACC's breach. However, if ACC breached the contract by wrongfully terminating CKF, then the proper measure of damages is set forth in section A-11 of the subcontract. Additionally, here, CKF seeks payment for work it has already performed under the contract, not work that it was prevented from performing.[4] Thus, this rule has no application to the instant action.

Instead, if it is determined that CKF breached the contract and that ACC therefore terminated CKF for cause, then ACC would be entitled to damages on its breach of contract counterclaim. It is well settled that "[t]he measure of damages for breach of contract is 'that sum which will put the injured party into the same position he would have been in had the contract been performed.'" *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995) (quoting *Perkins Motors, Inc. v. Autotruck Federal Credit Union*, 607 S.W.2d 429. 430 (Ky. App. 1980)). Here, the proper measure of damages is the sum ACC expended above the contract amount to complete performance, if it was reasonable and necessary. *See Campbell v. Snyder*, 154 S.W.2d 724, 726 (Ky. App. 1941). This amount would be reduced by any unpaid sum CKF was entitled to for work actually performed by CKF under the subcontract. *Carl Const. Co. v. Miller*, 29 S.W.2d 545, 547 (Ky. App. 1930).

Thus, the amount CKF was entitled to for work performed and the amount CKF was actually paid would be relevant to a determination of damages. However, ACC maintains that

---

[4] Generally, where a subcontractor is wrongfully prohibited from completing his contract, the proper measure of damages is the amount due for work already performed plus loss of profits on the entire contract. *See Ellis v. Knight*, 382 S.W.2d 391, 393 (Ky. App. 1964). However, here, CKF makes clear that, consistent with provision A-11 of the subcontract, it is only seeking compensation for work performed and not lost profits on work yet to be performed.

Case 5:11-cv-00042-TBR   Document 44   Filed 08/03/12   Page 9 of 13 PageID #: 312

the amounts listed on the Prompt Payment Certifications relating to payment to CKF are not relevant to the amount CKF was actually entitled to be paid for work performed.  In support of this position, ACC points to section A-4 of the subcontract which states that "No payment shall operate as an acceptance of the Work performed or materials furnished."  ACC explains that this clause exists for the practical purpose that sometimes deficiencies in work are not readily apparent at the time payment is requested for such work.

Although the amounts listed on the Prompt Payment Certifications may not be sufficient to definitively establish the amount CKF is entitled to be paid for the work performed, the bar for admissibility is not set so high.  The amounts listed on the Prompt Payment Certification tend make a fact, that CKF is entitled to be paid the amounts of Pay Requests Nos. 9 and 10 and the retainage amount, more probable than it would be without the evidence.  Thus, the Prompt Payment Certifications, which state the amount of ACC's pay request to be paid to CKF, are relevant to the amount CKF would be entitled to for work performed.  The Prompt Payment Certifications are also relevant to show the total amount CKF had already been paid, the total amount of retainage, and the total amount earned by CKF to date.  Additionally, the amount remaining to be paid out under the subcontract would be relevant to a determination of whether the amount ACC paid to complete the performance was reasonable and necessary.  Accordingly, the Prompt Payment Certificates are relevant to a determination of damages.

    **b.  Reason for Termination**

CKF contends that the Prompt Payment Certifications are admissions that CKF's work complied with the Project specifications, terms, and conditions.  In the Prompt Payment Certifications, ACC certifies to the government that "that amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract" and

9

that "this request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract." DN 37-1. The March 23, 2010 and April 20, 2010 Prompt Payment Certifications also state that amounts of $49,706.00 and $51,535.08, respectively, are to be paid to CKF Excavating. *Id*. at p. 1-2.

However, ACC maintains that the Prompt Payment Certifications are not relevant to the reason ACC terminated the subcontract. In support of this position, ACC states that "there is no logical nexus between an inaccuracy on a prompt payment certification and an alternative reason for termination. In fact, CKF offers no alternative reason for termination much less any that would be furthered by an inaccurate certification." DN 40 at p. 4.

ACC maintains that it terminated the contract due to the threatening and disruptive behavior of Chuck Eades, which it deemed to be a breach of CKF's contractual promise to comply with the law. Additionally, in its counterclaim, ACC alleges that CKF "materially breached the terms and condition of the subcontract by, among other things, failing to timely schedule, coordinate and complete its work, committing safety violations, failing to timely pay its subcontractors and suppliers and failing to ensure that its employees did not commit any violations of law." DN 14 at p. 7. It is CKF's position that ACC's stated reasons for termination are merely pretext "to counterbalance CKF's legitimate right to payment." DN 24 at p. 8.

The Court finds that the Prompt Payment Certifications are relevant to the reason for the termination. Although these documents do not definitively show that ACC's stated reasons were pretextual, it makes a fact of consequence – that CKF did not materially breach the subcontract – more probable than it would be without the documents. The documents tend to show that, as of the date the certifications were made, CKF performed its work in accordance with the terms of

10

the subcontract. Although the date of the alleged incident involving Chuck Eades occurred after the April 20, 2010 certification, the certifications are relevant to dispute ACC's allegations that CKF failed to timely schedule, coordinate, and complete its work, and failed to timely pay its subcontractors and suppliers. Courts have set the bar relatively low for relevancy under Rule 401. *See Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir.2006) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993)). The Prompt Payment Certifications meets this relatively low standard with respect to the reason for termination.

## 2. Other Arguments Against Admissibility

ACC further argues that the Prompt Payment Certifications cannot be used to provide CKF with a private right of action or to provide relief to a subcontractor. The Court agrees that CKF cannot use the Prompt Payment Act as a substantive basis of recovery. In *U.S. ex rel. Virginia Beach Mechanical Services, Inc. v. SAMCO Const. Co.*, 39 F. Supp. 2d 661 (E.D. Va. Mar. 10, 1999), a subcontractor argued that the prime contractor breached its agreements by failing to comply with the Prompt Payment Act's statutory provisions regarding notice. The district court found that, although contractors can pursue the contractual remedies ordinarily available to them if they do not receive payment, they cannot use the Prompt Payment Act as a substantive basis of recovery of that payment when they file their claims pursuant to the Miller Act. *Id.* at 675. In *Transamerica Premier Ins. Co. v. Ober*, 894 F. Supp. 471, 479-80 (D. Maine July 19, 1995), a district court likewise found that the Prompt Payment Act does not impose a statutory obligation for a prime contractor to make prompt payments to subcontractor. Finally, in *In re Thomas*, 255 B.R. 648 (D. N.J. Dec. 4, 2000), the court found that the Prompt Payment Act does not give subcontractors an additional cause of action for an alleged breach by a general contractor of a subcontract. *See also U.S. ex rel. King Mountain Gravel, LLC v. RB*

11

*Constructors, LLC*, 556 F. Supp. 2d 1250 (D. Colo. 2008) (where district court dismissed plaintiff subcontractor's claim against contractor for violation of the Prompt Payment Act).

Here, in contrast with the cases cited above and in ACC's briefs, CKF does not seek to use the Prompt Payment Act as a substantive basis of recovery. CKF only seeks to use the contents of the Prompt Payment Certifications to support its claim for breach of contract brought under the Miller Act. As stated above, CKF intends to use the Prompt Payment Certifications to show that it complied with the terms and conditions of the Project, that it is entitled to the amounts requested for work performed, and that there was only $117,474.96 worth of work left to perform on the contract but still $263,893.00 remaining to fund the subcontract. CKF does not contend that any violation of the Prompt Payment Act constitutes a basis for it to recover against ACC. Accordingly, the cases cited by ACC in support of its position are not applicable to the instant dispute. The Court has not been presented with and has not found any case law which supports ACC's position that the contents of the Prompt Payment Certifications are not admissible in a breach of contract action brought by a subcontractor against the contractor.

Lastly, ACC argues that the contends of the Prompt Payment Certifications provide no basis for an inference that any inaccuracy in the documents was the product of fraudulent or deceitful intent, and that any such argument by Plaintiffs at trial will improperly prejudice the jury against ACC. CKF has not argued that the contents of the document were in any way fraudulent. Instead, it is CKF's position that the contents of the documents accurately reflect the amount it is owed for the work performed. Therefore ACC's argument does not establish that the admission of the documents would be prejudicial.[5]

## CONCLUSION

---

[5] ACC makes other undeveloped arguments against the admissibility of the Prompt Payment Certifications. The Court finds these arguments to be without merit.

For the foregoing reasons, IT IS HEREBY ORDERED that the Prompt Payment Certifications are admissible.